UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

March 6, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Amanda C. v. Leland Dudek, Acting Commissioner, Social Security Administration*[1]
      Civil No. 23-2877-CDA

Dear Counsel:

On October 24, 2023, Plaintiff Amanda C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' filings[2] (ECFs 11 and 13). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on March 16, 2020, alleging a disability onset of October 1, 2003, later amending the alleged onset date to January 26, 2018. Tr. 80, 304-08. Plaintiff's claims were denied initially and on reconsideration. Tr. 167-68, 172-74, 176-80, 182-86. On July 27, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 75-120. Following the hearing, on March 21, 2023, the ALJ determined that Plaintiff was not

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on October 24, 2023. ECF 1. Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Accordingly, Commissioner Dudek has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a motion for summary judgment, or in the alternative, a motion for remand. *See* ECF 11.

*Amanda C. v. Dudek*
Civil No. 23-2877-CDA
March 6, 2025
Page 2

disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 52-69. The Appeals Council denied Plaintiff's request for review, Tr. 1-4, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since January 26, 2018, the alleged onset date as amended." Tr. 58. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "dermatomyositis, obesity, and bilateral hip osteoarthritis." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of hypertension, migraine headaches, depression, and attention deficit hyperactivity disorder ("ADHD"). *Id.* At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 60. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. She cannot climb ladders, ropes or scaffolds. She is to avoid concentrated exposure to extreme temperatures, atmospheric conditions as defined in the Selected Characteristics of Occupations ("SCO") of the Dictionary of Occupational Titles ("DOT"), and hazards such as unprotected heights and dangerous machinery. She is to avoid all exposure to direct sun light.

Tr. 61. At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a cashier II (DOT[4] #211.462-010). Tr. 67. At step five, the ALJ made the alternative finding

---

[3] 42 U.S.C. §§ 301 et seq.

[4] As noted by the ALJ, the "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the*

Amanda C. v. Dudek
Civil No. 23-2877-CDA
March 6, 2025
Page 3

that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Tr. 67-68.  The ALJ concluded that Plaintiff was not disabled.  Tr. 68.

### III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.    ANALYSIS

Plaintiff raises two arguments on appeal.  First, Plaintiff argues that the ALJ did not afford proper weight to the opinion of Dr. Tiniakou.  ECF 11-1, at 11-14.  Second, Plaintiff contends that the ALJ's RFC presented to the vocational expert ("VE") is legally insufficient. *Id.* at 14-16.  With respect to the second argument, Plaintiff asserts that the ALJ's RFC fails to account for all of Plaintiff's substantiated physical and mental limitations regarding Plaintiff's (1) ability to perform light work, including her issues with prolonged standing and walking, (2) need for unscheduled breaks in order to lie down, (3) mental health symptoms that would limit her to unskilled work, and (4) time off task and inability to consistently attend work. *Id.*  Defendant counters that the ALJ properly evaluated Dr. Tiniakou's opinion, supported the RFC with substantial evidence, and accounted for Plaintiff's limitations.  ECF 13, at 5-14.

   A.  The ALJ properly evaluated Dr. Tiniakou's medical opinion.

For claims filed after March 27, 2017, an ALJ "must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. § 404.1520c). The ALJ must "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions . . . in [a claimant's] case record." *Id.* (citing 20 C.F.R. § 404.1520c(b)).  "Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions." *Id.*

---

*Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

(citing 20 C.F.R. § 404.1520c(b)(2)). Therefore, the ALJ must "explain how [the ALJ] considered the supportability and consistency factors" when assessing a source's medical opinion. *Id.* "Supportability generally refers to 'the objective medical evidence and supporting explanations presented by a medical source.'" *Id.* (citing 20 C.F.R. § 404.1520c(c)(1)). In assessing consistency, the ALJ looks to the degree of cohesion between the medical opinion and "the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

Plaintiff contends that the ALJ did not sufficiently evaluate the supportability or consistency of Dr. Tiniakou's opinion "by cherry-picking evidence from the record highlighting only the negative objective findings[.]" ECF 11-1, at 12-14. The ALJ considered the medical evidence of Dr. Tiniakou, drafted in September 2021 and May 2022, who opined that Plaintiff "was capable of standing or walking for less than two hours, sitting for six hours, with hourly breaks and the ability to change positions at will," and "was able to lift and carry up to ten pounds occasionally, with occasional twisting and rare stooping, crouching, and climbing of ladders or stairs." Tr. 66. Dr. Tiniakou also stated that Plaintiff was "capable of low stress jobs, but with a 20% rate of off task behavior and a rate of absenteeism in excess of four days per month." *Id.* The ALJ determined that Dr. Tiniakou's opinion regarding Plaintiff's "ability to perform less than sedentary exertional level work, with additional postural and task accommodations to be unpersuasive, though the assertion that [Plaintiff] was limited in her ability to climb ladders, ropes or scaffolds is persuasive." *Id.*

As an initial matter, the ALJ was justified in disregarding Dr. Tiniakou's determination that Plaintiff was "unable to work" because that is "a determination reserved for the Commissioner." Tr. 66; *see* 20 C.F.R. §§ 404.1520b(c), 416.920b(c). On the issue of supportability, the ALJ found Dr. Tiniakou's opinion "minimally supported" by Dr. Tiniakou's last documented visit with Plaintiff in January 2022, during which Plaintiff "was stable . . . , without evidence of either muscle or skin disease activity." Tr. 66. During Plaintiff's visit, "clinical findings included normal full range of joint motion, an absence of atrophy or synovitis, normal bulk and tone, intact coordination, intact sensation, and unremarkable unassisted gait." *Id.* Plaintiff was also observed to have "only a few faint areas of skin erythema[,]" and her "[s]trength was full in all muscles tested, with the exception of arm abductors[.]" *Id.* In examining consistency, the ALJ found that "[i]n general, the exceedingly limited nature of Dr. Tiniakou's statement is inconsistent with records which identify waxing and waning symptoms, with worsened pain when steroids are adjusted." *Id.* The ALJ acknowledged that Plaintiff "reported subjective weakness and pain, though clinical examinations between 2017 and 2022 have shown generally intact musculoskeletal findings, with full ranges of motion, no synovitis or atrophy, unassisted gait, intact sensation, and generally intact strength." *Id.* The ALJ noted that Plaintiff's testimony "that she cares for her five-year-old child and is able to navigate the community via transit . . . appear[s] to exceed the boundaries of Dr. Tiniakou's statement." *Id.* The ALJ further found Dr. Tiniakou's statement "inconsistent with imaging, which has demonstrated only mild osteoarthritis of the hips, with negative, though more remote, EMG testing." *Id.*

Because the ALJ examined the supportability and consistency of Dr. Tiniakou's opinion, their evaluation comports with the SSA's regulatory framework.[5] *See* 20 C.F.R. § 404.1520c. Plaintiff fails to identify any evidence that the ALJ failed to review. Her challenge amounts to a disagreement with how the ALJ evaluated the persuasiveness of Dr. Tiniakou's medical opinion. But this Court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Accordingly, the Court declines Plaintiff's invitation to engage in a *de novo* review of Dr. Tiniakou's opinion.

### B. Substantial evidence supports the ALJ's RFC.

A careful review of the ALJ's decision demonstrates the RFC rests upon substantial evidence. A claimant's RFC is "the most [they] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). An RFC assessment must include an evaluation of a claimant's ability to perform the physical functions listed in 20 C.F.R. §§ 404.1545(b) and 416.945(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that "may reduce [a claimant's] ability to do . . . work." 20 C.F.R. §§ 404.1545(b), 416.945(b); *see* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

Only after such an analysis may an ALJ express RFC in terms of the exertional level of work of which the ALJ believes the claimant to be capable. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021); *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (holding that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested'") (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" SSR 96-8p, 1996 WL 374184, at *7. Thus, an ALJ must

---

[5] In passing, Plaintiff faults the ALJ for failing "to address factors three, four, and five in 20 C.F.R. § 416.920c(c) and § 404.1520c(c)." ECF 11-1, at 13-14. For claims filed after March 27, 2017, an ALJ is not required to evaluate each factor. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Because the ALJ assessed the supportability and consistency of Dr. Tiniakou's opinion and an ALJ's consideration of the remaining factors in 20 C.F.R. §§ 404.1520c(c), 416.920c(c) is discretionary, the Court detects no error in the ALJ's decision whether to consider these factors. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (explaining that an ALJ "may, but [is] not required to," consider the factors in 20 C.F.R. § 404.1520c(3)-(5) and § 416.920c(3)-(5) in assessing medical opinions).

identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Plaintiff challenges the ALJ's assessment of the standing and walking requirements of light work and argues that she should be limited to less-than-sedentary work. ECF 11-1, at 14-15. Plaintiff maintains that the ALJ failed "to adequately account for [Plaintiff's] dermatomyositis symptoms[,]" arguing that "medical treatment notes, the opinion of [Plaintiff's] treating rheumatologist, and [Plaintiff's] hearing testimony all support that she would be unable to perform light work due to her issues with prolonged standing and walking as a result of her chronic pain and weakness in her hips and lower extremities." *Id.* at 15.

The Court disagrees. The ALJ engaged in a narrative discussion of Plaintiff's medical evidence, spanning seven pages and citing to specific evidence in the record. Tr. 61-67. The ALJ articulated a logical explanation of how this evidence, Plaintiff's testimony, and the opinions of medical professionals led to their conclusion that Plaintiff can perform light work with certain physical and environmental limitations. Tr. 61, 67. After discussing the evidence, the ALJ found that the objective evidence does not support the view that Plaintiff's impairments "preclude her from completing basic work-related activities." Tr. 67. The ALJ therefore limited Plaintiff to "light exertional level work, with additional postural, temperature, respiratory irritant, sunlight exposure, and hazard accommodations in deference to her persistent joint and skin manifestations of her dermatomyositis, documented by some abnormal clinical and diagnostic findings, compounded by her chronic mild hip osteoarthritis, and exacerbated by her obese body habitus." *Id.*

Contrary to Plaintiff's assertion, the ALJ evaluated Plaintiff's dermatomyositis symptoms and concluded that Plaintiff's "at least partially successful, generally conservative, treatment history is inconsistent with disabling conditions." Tr. 65. For example, the ALJ considered Plaintiff's testimony that "she is unable to work due to a combination of symptoms including chronic fatigue, weakness, pain, [and] numbness in her feet and hands," and that her "pain was described as rated at a '5' on a ten-point escalating pain scale, with some acute increases." Tr. 62. Plaintiff also testified that she "was able to stand or walk for very limited amounts[,]" and that "she brings a cane with her when in the community." *Id.* The ALJ observed that treatment records suggested Plaintiff's dermatomyositis "became symptomatic in 2017, following the birth of her child, after a long period of dormancy." Tr. 65. The ALJ noted that Plaintiff's skin rashes "have been largely controlled with medication," and that she "has benefitted from chronic steroids, though she has been unable to wean from this medication completely." *Id.* The ALJ observed that Plaintiff had been "seen by her rheumatologist on a sporadic basis, at times going nearly eighteen months between visits due to difficulty with transportation, though during those periods, she does not appear to have required emergent medical intervention." *Id.* The ALJ noted that Plaintiff "reported fluctuating subjective weakness and joint pain," however, "[p]hysical examinations between 2017 and 2022 have yielded mild to moderate abnormalities, though with intact ranges of motion, normal unassisted gait, intact sensation, intact coordination, and generally intact strength." *Id.* The ALJ also observed that diagnostic imaging of Plaintiff's hips failed to "identify joint instability, severe degeneration, or severe impingement." Tr. 62. Indeed, Dr. Tiniakou observed

Plaintiff "was stable at her last visit in 2022, without evidence of either skin or muscle disease." Tr. 65. As such, the ALJ accommodated for Plaintiff's dermatomyositis "by targeting environmental conditions noted to exacerbate her symptoms, including temperature extremes, respiratory irritants, and sunlight." *Id.* Moreover, as explained above, the ALJ found Dr. Tiniakou's statement regarding Plaintiff's "ability to perform less than sedentary exertional level work" unpersuasive because the restrictive limitations were "minimally supported" by treatment records and "inconsistent with records which identify waxing and waning symptoms[.]" Tr. 66.

The objective medical evidence examined by the ALJ supported their conclusion that Plaintiff's hearing testimony "concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 62. The Fourth Circuit has held that "[a]lthough a claimant's allegations about [their] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [she] suffers[.]" *Craig*, 76 F.3d at 595; *see also Gross v. Heckler*, 785 F.2d 1163, 1165-66 (4th Cir.1986) (finding the claimant's claim that he was disabled not credible when "[h]is arthritis responded to conservative treatment, and his stomach pains were relieved by antacids. If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Here, Plaintiff disagrees with the ALJ's conclusions, which are supported by substantial evidence. *See* ECF 11-1, at 14-15. Moreover, Plaintiff does not identify any relevant medical records or testimony that the ALJ failed to consider or that the ALJ failed to resolve any evidentiary contradictions. Plaintiff's argument again amounts to a request to reweigh evidence and, once again, must fail.

C. <u>The ALJ did not err by excluding from the RFC the need to lie down or take unscheduled breaks.</u>

Plaintiff argues that the ALJ failed to account for Plaintiff's need to lie down during the workday, asserting that medical evidence and Plaintiff's testimony support the limitation "due to pain and inflammation related to her dermatomyositis, bilateral hip osteoarthritis, and migraine headaches." ECF 11-1, at 15. Plaintiff highlights Dr. Tiniakou's opined limitation that Plaintiff "would need to take unscheduled breaks every hour to lie down." *Id.* The Court finds this argument unavailing.

"The RFC determination is an issue ultimately reserved for the ALJ." *Geraldine S. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-3447, 2019 WL 3935376, at *1 (D. Md. Aug. 20, 2019); *see Jones v. Saul*, No. 20-0437, 2021 WL 1015821, at *14 (S.D.W. Va. Feb. 23, 2021), *report and recommendation adopted*, No. 20-0437, 2021 WL 1015896 (S.D.W. Va. Mar. 16, 2021) (citing 20 C.F.R. § 404.1546(c) ("to the extent that [c]laimant contends the ALJ did not adopt an RFC assessment endorsed by his treating physicians . . . , it is also clear that the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner.")). An ALJ's RFC determination must be based "on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). As explained above, the ALJ properly evaluated Dr. Tiniakou's opinion, including the statement that

Plaintiff would need "hourly breaks" to lie down and ultimately found Dr. Tiniakou's "additional postural and task accommodations to be unpersuasive[.]" Tr. 66. Even if the ALJ had found this portion of Dr. Tiniakou's opinion persuasive, "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight." *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014); *see Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a [source's] opinions verbatim; nor is the ALJ required to adopt the [source's] limitations wholesale.").

Defendant is correct in arguing that Plaintiff's challenge disagrees with the ALJ's conclusions regarding her physical impairments—conclusions supported by substantial evidence. *See* ECF 13, at 9-10. Again, Plaintiff does not identify any relevant medical records or testimony that the ALJ failed to consider or any evidentiary contradictions that the ALJ failed to resolve. For a third time, Plaintiff seeks reweighing of evidence, which the Court will not do.

D. <u>The ALJ did not err by excluding from the RFC mental limitations.</u>

Next, Plaintiff argues that the ALJ failed to include any limitations in the RFC accommodating her mental impairments, asserting that her "testimony and the available records support that her mental health symptoms would limit her to unskilled work[.]" ECF 11-1, at 15-16.

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). "A finding of a mild limitation means that functioning in a given area independently, appropriately, effectively, and on a sustained basis is only slightly limited." *Carter v. Kijakazi*, No. 5:22CV159-GCM, 2023 WL 5014781, at *3 (W.D.N.C. Aug. 7, 2023) (citing 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00F2b). Accordingly, when a claimant possesses only a "mild" limitation in an area of mental functioning, as Plaintiff does here, the ALJ is not required to craft an RFC provision to address the limitation. *See, e.g.*, *Moyers v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-357, 2018 WL 1471459, at *4 (D. Md. Jan. 5, 2018) ("[T]here is no requirement that a finding of 'mild' difficulty in concentration, persistence, or pace [("CPP")] must translate to a correlating limitation in the RFC assessment." (citing *Mascio*, 780 F.3d at 638)); *Sprague v. Colvin*, No. 8:13-CV-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla. June 9, 2014) (rejecting an argument that an ALJ was required to include mental RFC limitations because she found that the plaintiff had mild limitations in social functioning and CPP, and noting that "in many, if not most cases, there will be no functional limitations from a nonsevere impairment").

At step three, the ALJ concluded that Plaintiff had a mild CPP limitation as well as a mild limitation in understanding, remembering, or applying information. Tr. 59-60. In assessing Plaintiff's RFC, the ALJ noted that Plaintiff testified to "anxiety and discomfort around unknown people[,]" and described depression and ADHD that were "treated with medication, but not

resolved." Tr. 62. The ALJ acknowledged that Plaintiff's ADHD and depression had been "more recently addressed with medication through a mental healthcare provider in 2022," and that "mental status examinations have yielded only mild abnormalities." Tr. 65. The ALJ concluded that Plaintiff's "at least partially successful, generally conservative, treatment history is inconsistent with disabling conditions." *Id.*

Defendant asserts that the ALJ's discussion, although brief, adequately explained why Plaintiff's non-severe, mild mental limitations did not warrant any corresponding RFC limitations. He is correct. *Kenneth C. v. Kijakazi*, No. 1:22-CV-02936-BAH, 2023 WL 5721641, at *4 (D. Md. Sept. 5, 2023) ("This analysis, while brief, makes clear that the ALJ did not determine that Plaintiff's mild 'paragraph B' limitations, or the non-severe mental impairments corresponding to them, warranted RFC restrictions."). Plaintiff fails to identify any evidence that the ALJ failed to review. Yet again, the Court rejects the invitation to reweigh evidence.

E. <u>The ALJ did not err by excluding from the RFC Plaintiff's time off-task and inability to consistently attend work.</u>

Plaintiff argues that the ALJ failed to account for her time off task and inability to consistently attend work. ECF 11-1, at 16. Specifically, Plaintiff asserts that her "chronic symptoms, including her chronic pain, muscle weakness, fatigue, migraines, depression, anxiety, memory issues, and difficulty focusing," would cause her to be off task during the workday. *Id.* But here, as explained above, the ALJ properly evaluated Dr. Tiniakou's opinion, including the statement that Plaintiff would have "a 20% rate of off task behavior and a rate of absenteeism in excess of four days per month," and ultimately found Dr. Tiniakou's "task accommodations to be unpersuasive[.]" Tr. 66. The ALJ acknowledged Plaintiff's "testimony regarding the unpredictable nature of her illness," but found "no support within the record for significant off-task and absenteeism accommodations." *Id.* As such, the ALJ expressly stated that "no parallel limitation[s] have been included in the [RFC]." As Defendant correctly states, Plaintiff disagrees with the ALJ's conclusions, but their discussion is supported by substantial evidence. *See* ECF 13, at 11. Plaintiff does not identify any relevant medical records or testimony that the ALJ failed to consider. For a fifth time, Plaintiff's argument amounts to a request to reweigh evidence and, once again, must fail.

F. <u>The ALJ's RFC presented to the VE is sufficient.</u>

Plaintiff's final argument contends that the VE's testimony regarding off-task time, unscheduled absences, and unscheduled breaks should have been incorporated into the RFC. ECF 11-1, at 15-16; *see* Tr. 119. Even though Plaintiff's attorney posed various hypotheticals to the VE regarding these limitations, an ALJ is not required to adopt the VE's suggested limitations. *See France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)) ("[A]n ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ."). As such, the ALJ did not err by not incorporating the VE's testimony of these limitations into the RFC.

*Amanda C. v. Dudek*
Civil No. 23-2877-CDA
March 6, 2025
Page 10

## V. CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 11, is DENIED and Plaintiff's alternative motion for remand, ECF 11, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge